David MORK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0901–CR–26.

Court of Appeals of Indiana.

Aug. 28, 2009.

A. Frank Gleaves III, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

David Mork appeals his conviction for theft as a class D felony.[1] Mork raises two issues, which we revise and restate as follows:

I.     Whether the trial court improperly denied Mork's motion for discharge under Ind. Criminal Rule 4(B); and

II.     Whether the evidence was sufficient to support Mork's conviction.

We affirm.

The relevant facts follow. Mork and the victim, Michael Einsla, met through work in the winter of 2006, when Mork began working in the same warehouse as Einsla. On the evening of April 29, 2007, Mork arrived at Einsla's home in Indianapolis unannounced and uninvited. Mork told Einsla that he was homeless, and Einsla allowed Mork into his home to use his washing machine. Einsla owned an SKS Yugoslavian rifle, and when Mork entered the house, Einsla moved the rifle from the living room closet to his bedroom closet in Mork's presence. The bedroom closet did not have a door, so the gun was immediately visible upon entering the bedroom. Einsla closed the bedroom door as he returned to the living room.

Later, as Mork washed his clothes, Mork and Einsla watched television in the living room. Around 11:00 p.m., Einsla fell asleep. At that time, Mork was awake and the front door was closed. When

---

1. Ind.Code § 35–43–4–2 (2004) (subsequently amended by Pub.L. No. 158–2009, § 8 (eff. July 1, 2009)).

Einsla awoke one to two hours later, the front door was open six to eight inches and his bedroom door was open. Mork was not in the house and Mork's car was gone, but his clothes were still in the washing machine.

One or two days later, Einsla noticed that his rifle was missing. Einsla lived alone and no one else had a key to his home. Between the time he fell asleep with Mork in his home and the time he discovered the gun was missing, Einsla had no other visitors and there were no signs of forced entry into his home. Einsla tried repeatedly to contact Mork about the missing rifle and asked Mork's wife to have Mork call him about the missing rifle, but Mork refused to return his calls. Mork never contacted Einsla about retrieving the clothes he had left in Einsla's washing machine. After a week without contact from Mork, Einsla reported the rifle stolen to the police.

The State charged Mork with theft on August 20, 2007 in Marion County. On March 10, 2008, Mork was sentenced to serve time in prison in another case in Steuben County. His earliest possible release date was 2011. On July 29, 2008, an initial hearing was held in this case, and Mork requested a speedy trial. The trial court scheduled a jury trial for September 4, 2008. On August 27, 2008, a pretrial conference was held, and the trial court vacated the trial date and released Mork on his own recognizance. On November 24, 2008, two days before the new trial date, Mork filed a Motion for Discharge pursuant to Ind. Criminal Rule 4(B). At a hearing on November 26, 2008, the trial court found Mork was not entitled to discharge under Ind. Criminal Rule 4(B) because he was released on his own recognizance within the applicable seventy-day time period and his subsequent incarceration was not due to the pending charges in this case. The trial court denied Mork's motion and set trial for December 8, 2008. Following a bench trial, the trial court found Mork guilty of theft and sentenced him to two years in the Indiana Department of Corrections.

### I.

The first issue is whether the trial court erred by denying Mork's motion for discharge under Ind. Criminal Rule 4(B). We review *de novo* a trial court's denial of a motion to discharge a defendant. *Kirby v. State*, 774 N.E.2d 523, 530 (Ind.Ct.App. 2002), *reh'g denied, trans. denied.* "The Sixth Amendment to the United States Constitution and Article 1, section 12 of the Indiana Constitution guarantee the right to a speedy trial. The provisions of Ind. Criminal Rule 4 implement these protections." *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind.Ct.App.2009) (citing *Clark v. State*, 659 N.E.2d 548, 551 (Ind.1995)), *trans. denied.* Ind. Criminal Rule 4(B)(1) provides, in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Once a defendant properly requests a speedy trial, the trial court must assign the case a meaningful trial date within the time prescribed by Ind. Criminal Rule 4(B). *Clark*, 659 N.E.2d at 551. "A non-incarcerated defendant's right to speedy trial is implemented by the one-year limitation imposed by Ind.Crim. Rule 4(C). Once released from custody, a de-

fendant receives no further benefit from Crim. R. 4(B)." *Williams v. State,* 631 N.E.2d 485, 486–487 (Ind.1994), *reh'g denied; see also Bartley v. State,* 800 N.E.2d 193, 195 (Ind.Ct.App.2003) ("Since Bartley is no longer incarcerated on the instant charges, his speedy trial rights are now governed by Criminal Rule 4(C).").

Mork argues that "Indiana law recognizes that the protection afforded a defendant under CR4 are [sic] available to a defendant who requests early trial on one charge while being held in jail on another." Appellant's Brief at 7. In support of his argument, Mork cites *Fossey v. State,* 254 Ind. 173, 258 N.E.2d 616 (1970); *Gill v. State,* 267 Ind. 160, 368 N.E.2d 1159 (1977); and *Jackson v. State,* 663 N.E.2d 766 (Ind.1996). In *Poore v. State,* 685 N.E.2d 36, 40 (Ind.1997), the Indiana Supreme Court held that *Fossey, Gill,* and *Jackson* "stand for the proposition that incarceration due to the pending charge at issue need not be the *only* reason the defendant is in jail at the time the speedy trial is requested under Rule 4(B)." (Emphasis added). Based upon this language, we conclude that incarceration on a present offense must be a reason that the defendant is in jail. *See also Poore,* 685 N.E.2d at 38 (discussing the text of Rule 4(B) and holding that the phrase "held in jail on an indictment or affidavit" as used in Rule 4(B) "[a]lthough not entirely without ambiguity ... clearly contemplates a defendant in custody on a *pending* criminal charge") (emphasis added).

The record reveals that Mork requested a speedy trial on July 29, 2008, and the trial court released Mork on his own recognizance twenty-nine days later on August 27, 2008. Generally, "[o]nce released from custody, a defendant receives no further benefit from Crim. R. 4(B)." *Williams,* 631 N.E.2d at 487. Once the trial court released Mork from custody, he was no longer entitled to the benefits of Ind. Criminal Rule 4(B). *See, e.g., id.* at 486–487 (holding that "[o]nce released from custody, a defendant receives no further benefit from Crim. R. 4(B)"). Accordingly, the trial court did not err by denying Mork's motion for discharge under Ind. Criminal Rule 4(B).

## II.

The next issue is whether the evidence was sufficient to sustain Mork's conviction for theft as a class D felony. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless " 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.' " *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* A theft conviction may be sustained by circumstantial evidence. *Ward v. State,* 439 N.E.2d 156, 159 (Ind.1982).

A judgment may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt.... Further, intent may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. The trier of fact is entitled to infer intent from the surrounding circumstances.

*Hayworth v. State,* 798 N.E.2d 503, 507 (Ind.Ct.App.2003) (internal citations omitted).

The offense of theft is governed by Ind. Code § 35–43–4–2, which provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Thus, to convict Mork of theft, the State needed to prove that Mork knowingly or intentionally exerted unauthorized control over Einsla's rifle, with intent to deprive Einsla of part of the value or use of the rifle.

The record reveals sufficient evidence for a reasonable trier of fact to infer Mork's commission of theft. Einsla testified that Mork saw him move his rifle from the living room to his bedroom. Einsla also testified that he fell asleep while Mork was awake in his house, and that when he awoke, Mork was gone and had left his clothes in the washing machine. The bedroom door, which Einsla closed when he put the rifle in the bedroom, was open, as was the front door. Einsla testified that he noticed his rifle was gone two days after Mork's visit. Einsla lived alone and no one else had a key to his home. Between the time he fell asleep with Mork in his home and the time he discovered the gun was missing, Einsla had no other visitors and there were no signs of forced entry into his home. When Einsla tried to contact Mork about the missing rifle, Mork refused to return Einsla's calls, although he knew Einsla was calling about the missing rifle. Mork never contacted Einsla and never retrieved his clothing from Einsla's house. Based upon our review of the record, we conclude that evidence of probative value exists from which the trial court could have found that Mork committed theft as a class D felony. *See, e.g.,*

*Long v. State* 867 N.E.2d 606, 614 (Ind.Ct. App.2007) (holding that the evidence presented was sufficient to support defendant's theft conviction), *reh'g denied.*

For the foregoing reasons, we affirm Mork's conviction for theft.

Affirmed.

CRONE, J., and MAY, J., concur.